James A. BURKS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–89–01145–CR, 01–89–01146–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 5, 1990.

Discretionary Review Refused
Sept. 19, 1990.

836

John F. Carrigan, Houston, for appellant.

John B. Holmes, Dist. Atty., Carol Cameron and Calvin Hartmann, Asst. Dist. Attys., for appellee.

Before HUGHES, WARREN and DUGGAN, JJ.

## OPINION

HUGHES, Justice.

Appellant was charged with aggravated assault and burglary of a building.[1] Appellant's counsel entered not guilty pleas before a jury on his client's behalf. The jury found appellant guilty of both charges and assessed punishment at 30 years confinement for the burglary, and five years confinement and a $5,000 fine for the aggravated assault.

1. Companion cases. Appeal 01–89–01146 concerns appellant's burglary conviction; appeal

Appellant does not challenge the evidentiary sufficiency of his conviction and we will not review the facts at length. In summary, appellant burglarized a supply company and was confronted by a security guard who attempted to apprehend him. After a struggle in which appellant turned the security guard's gun on him, a Houston police officer intervened and apprehended appellant.

Appellant raises nine points of error.

Point one contends that the court abused its discretion in expelling appellant from the courtroom, because the expulsion "deprived [appellant] of his confrontation and cross examination rights" under the federal and state constitutions, and the court did not "consider alternative measures available under the circumstances" and did not "clearly articulate on the record why less drastic measures would not have sufficed."

Point one is based on these events:

COURT: [To appellant] At this point [the opening of voir dire] then, I want you to be quiet, okay? Anything you got to say, say it through your counsel. I don't want you to disturb this court.

APPELLANT: My counsel is not on trial.

C: You want me to gag you?

A: I don't care what you do. I really don't because I have a writ of habeas corpus for the last seven months that you refuse to give me a hearing on, trying to railroad me and take me to trial, and that's not going to work.

C: You're going to trial.

A: No, I'm not going to trial without a hearing on writ of habeas corpus. You can hold me back in the holding cell and hold it without me.

C: That's what I can do.

A: I know you sure can do that bullsh— you're talking about.

C: Mr. Bailiff!

A: That's right, motherf———, you people, f— you people. I done told you f— this bullsh—!

01–89–00145 concerns appellant's aggravated assault conviction.

Appellant was removed from the courtroom, but was returned for trial on condition of good behavior. When the court stood ready to accept the plea:

COURT: To the indictment, James A. Burks, how do you plead, guilty or not guilty?

A: (No response).

C: You refuse?

A: I refuse anything.

C: Okay.

A: My attorney can't speak for me because he's not my attorney. I don't want him to speak for me.

APPELLANT'S COUNSEL: Not guilty.

A: He can't represent me. I don't want him.

C: How do you plead?

A: I plead not guilty to everything. [I'm] sick of this bullsh—.

COUNSEL: In the name ...

A: Who you-all afraid of? Who runs this courtroom? I'm trying to get some legal rights in here.

C: Be quiet.

A: I don't have to be quiet, you're screwing me. I can't be quiet. You doing me like this, I'm not an animal, I'm a human being. People doing me like you're doing, such justifying this [sic].

C: Yeah.

A: That's not right, that's wrong. Let me out.

C: You stand quiet.

A: I don't want to hear this sh—.

C: Stand over here.

A: You keep letting people f— over me and doing nothing.

C: I'm telling you to keep quiet. That's right.

A: Sick bastard.

C: Read the indictment to him.

Because appellant was continuously nonresponsive and disruptive, the court ordered him returned to his cell and the trial proceeded without him. He was once more returned to the courtroom, but was again removed when he was disruptive.

■ Appellant initially complains that his expulsion violated his federal and state constitutional rights, including the rights of free speech and the right to be present in the courtroom during his own trial. We disagree. In *Illinois v. Allen,* the United States Supreme Court held that a criminal defendant may lose his constitutional right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nonetheless "insists in conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on within the courtroom." 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970). As Justice Black noted,

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Id.* (*see further* Brennan, J., concurring); *Sanchez v. State,* 702 S.W.2d 258, 259 (Tex. App.—Dallas 1986, pet. ref'd) (citing *Allen* as controlling). As the Court held in *Allen,* behavior of "an extreme and aggravated nature" warrants a defendant's expulsion from a courtroom and is not violative of federal constitutional rights. 397 U.S. at 343, 90 S.Ct. at 1060. We find no cases that extend Texas constitutional guarantees regarding a criminal defendant's right to be present in a courtroom during trial beyond those found in the federal constitution. *See, e.g., Sanchez,* 702 S.W.2d at 259 (applying *Allen* analysis to Tex. Const. art. I, § 10 challenge). Accordingly, appellant's expulsion was not constitutionally improper.

■ Appellant further contends that his expulsion was improper because the judge did not consider "alternative measures under the circumstances" or "clearly articulat[e] on the record why less drastic measures would not have sufficed." We disagree. First, as held in *Allen,* a trial judge

has "sufficient discretion" to deal with such situations—no single procedure is universally appropriate. 397 U.S. at 343, 90 S.Ct. at 1060. Here, the judge removed the defendant from the voir dire proceedings, and allowed him to return so long as his conduct conformed with acceptable standards of behavior. When he returned, his misconduct persisted and he was again removed. Appellant was returned to the courtroom a third time, and his conduct forced his expulsion. We find that the judge's approach was well within his discretion as outlined by *Allen.* Moreover, the "alternative method" urged by appellant and mentioned by the *Allen* Court, gagging, would have prevented appellant from cross-examining State witnesses—the crux of his complaint regarding his expulsion.

The trial court did not abuse its discretion in expelling appellant; point of error one is overruled.

In point of error two, appellant complains that "the trial court erred in refusing to sustain [his] objection to being represented by appointed counsel." Appellant admits that he "did not demand to proceed pro se" and he does not complain that he was denied the right to represent himself. Instead, he complains that counsel "was forced upon him." Appellant's complaint is based on his remark in the colloquy described above, "My attorney can't speak for me because he's not my attorney. I don't want him to speak for me."

■■■ An accused does not have the right to choose appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reasons for the appointment of new counsel, he must accept court-appointed counsel. *Thomas v. State,* 550 S.W.2d 64 (Tex.Crim.App.1977); *Aguilar v. State,* 651 S.W.2d 822, 823 (Tex.App.—Houston [1st Dist.] 1983, no pet.). Here, appellant's remarks are not sufficient to constitute a waiver of counsel. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (waiver must be a voluntary, intelligent relinquishment of known rights,

following cautioning by court). Appellant's outburst does not indicate that he wished to proceed pro se, or reflect that appellant wanted (let alone demonstrated a need for) a new lawyer. The court did not err in allowing court-appointed counsel to continue his representation of appellant. Point of error two is overruled.

In points of error three and four, appellant complains that his expulsion from the courtroom "denied him his constitutional right to testify" under the federal and state constitutions. U.S. CONST. amends. VI & XIV; TEX. CONST. art. I, § 10.

■■■ Appellant was absent from the courtroom during the State's case, having been removed for unruliness. When the State rested, appellant's lawyer approached the bench and had an off-the-record discussion with the judge, after which he unsuccessfully moved for an instructed verdict of acquittal. He then rested. The record is silent about appellant's intent to testify on his own behalf. A criminal defendant has an absolute right to testify on his own behalf. U.S. CONST. amends. VI & XIV; TEX. CONST. art. I, § 10. Here, a lawyer presented a case without including the accused's testimony. The record does not indicate that the court denied appellant the right to testify, or even that appellant wanted to testify. Appellant's lawyer did not object to the lack of appellant's testimony, or request that provisions be made for him to testify, and so waived any complaint on appeal. *See* TEX.R.APP.P. 52(a). Appellant has not challenged the effectiveness of counsel's trial performance. We overrule points of error three and four.

■■■ In point of error five, appellant complains that his trial contains harmful and reversible *Rose* error.

The jury was instructed on parole, pardon, and good conduct time in accordance with article 37.07 of the Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1990). The Court of Criminal Appeals subsequently held that article 37.07 is an unconstitutional violation of separation of powers principles and due process guarantees. *Rose v.*

*State,* 752 S.W.2d 529 (Tex.Crim.App.1987). The instructions in this case were improper and, accordingly, we must analyze the harmfulness of the error. *Rose,* 752 S.W.2d at 553; Tex.R.App.P. 81(b)(2) (error must have made "no contribution to conviction or punishment"). In analyzing the harmfulness of the error, we consider:

1. voir dire examination;
2. jury argument;
3. jury notes;
4. the term of years assessed;
5. a jury finding of a deadly weapon;
6. jury's rejection of an application of probation;
7. convictions in one trial of two or more violent offenses involving multiple victims, where the jury assesses various sentences;
8. additional jury instructions;
9. the facts of the case;
10. prior convictions; and
11. whether appellant objected to charge.

*Arnold v. State,* 786 S.W.2d 295, 301–12. (Tex.Cr.App.1990). The State carries the burden to show that the improper instruction did not contribute to the conviction or punishment. In analyzing harm under Tex. R.App.P. 81(b)(2), we start with the premise that a jury will consider the existence of parole laws and "thereby assess a term of years it believes may ensure the defendant serves more than the minimum prescribed regardless of what prison and parole authorities may later decide." *Arnold,* 786 S.W.2d at 301. Mindful of this premise, we review the record for the factors listed in *Arnold* that may have reasonably affected the minds of the jurors in their determination of punishment, "the ultimate inquiry being whether it is impossible to say beyond a reasonable doubt that considering declarations made by the trial court in its section 4 instruction, it did not influence the jury adversely...." *Id.* at 301–02.

During the voir dire, the prosecutor discussed parole in response to a question posed by a venireman. The prosecutor replied that the Texas Board of Pardons and Paroles determines how long a defendant will actually serve. No other references to parole or good time were made. The prosecutor's response has not been shown to induce jurors to consider parole time in assessing punishment (factor 1).

Appellant's lawyer told the jury during closing argument that they "are not to consider the manner in which the parole law may be applied to this particular defendant." He further told the jury that they were "not to talk about the extent to which the parole law may actually apply to this defendant." The prosecutor never mentioned parole or good time credit during his argument. Neither counsel's jury argument induced the jury to consider and apply the parole law in assessing punishment (factor 2).

There is no evidence that any member of the jury discussed or considered parole, or based punishment on a consideration of parole. The record contains no jury notes reflecting a consideration of parole (factors 3, 6).

The appellant was sentenced to 30 years confinement for burglary of a building; the offense (with a successful enhancement) carries a penalty range of between five years and life. Tex.Penal Code Ann. §§ 12.32, 30.02(c) (Vernon 1989). Appellant was sentenced to five years confinement for aggravated assault plus a $5,000 fine; the offense carries a penalty range of between two and ten years and a $10,000 fine. Tex.Penal Code Ann. §§ 12.34, 22.02 (Vernon 1989). For both offenses, the jury assessed mid-range penalties; there is no evidence that the idea of parole or pardon lead the jury to inflate appellant's penalties (factor 4).

The jury found that appellant used a deadly weapon, a firearm, in committing the offense (factor 5).

The trial court gave the jury additional instructions not to consider the length of the sentence, and not to consider the manner in which the parole law may be applied to appellant (factor 8).

The facts of the case support appellant's conviction: appellant burgled a store, and after being chased by complainant, appellant attempted to shoot him. Appellant

presented no witnesses on his own behalf (factor 9).

Appellant had previously been convicted for aggravated assault and served two years (factor 10).

Appellant did not object to the trial court's charge to the jury regarding the parole and good time law (factor 11).

Based on a review of the record in light of *Arnold*, we can say beyond a reasonable doubt that the court's error in submitting the parole instructions did not contribute to the punishment assessed by the jury.

Point of error five is overruled.

In points of six through eight, appellant contests the court's treatment of his purported claim that he was incompetent to stand trial. In point six, appellant maintains the court "fail[ed] to conduct a hearing on the issue of whether ... appellant was competent to stand trial after *evidence* of appellant's incompetency ... had been called to its attention" (emphasis added). Point of error seven alleges that the court "erred in failing to impanel a jury to resolve the issue of appellant's competency." Finally, point of error eight contends that the court's errors in this regard deprived him of his constitutional rights.

Appellant presented *no evidence* that he was incompetent to stand trial so as to require the court to conduct hearings. In April 1987, counsel for appellant and the State filed joint motions for two separate psychiatric evaluations of appellant. The court granted the motions, but the examining physician later informed the trial judge that appellant was unwilling to cooperate. Accordingly, counsel again filed joint motions for evaluation, and again both were granted. Once again, the examining physician informed the trial court that appellant was uncooperative. There is no further evidence in the record to suggest appellant's incompetence.

■■■ A defendant must prove incompetence to stand trial by a preponderance of evidence. *Manning v. State*, 730 S.W.2d 744, 748 (Tex.Crim.App.1987). He has not done so. Requests for psychiatric evaluations are not probative of incom-

petence. *Gardner v. State*, 733 S.W.2d 195, 200 (Tex.Crim.App.1987) *cert. denied*, — U.S. ——, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). We reject appellant's contention that his "unruly and disruptive courtroom demeanor ... his distrust of the psychologist assigned to examine him, his failure to communicate or cooperate with either attorney, his abuse of counsel," and his general failure to cooperate are probative of incompetence to stand trial. If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior. In regard to point six, absolutely no evidence suggests that appellant may be incompetent so as to warrant further judicial investigation; the court did not err in failing to hold a hearing. In regard to point seven, appellant did not request a jury be impanelled to resolve the issue of incompetence and can hardly be heard to complain that the court did not order one, *sua sponte*, when presented with no evidence. For these reasons, appellant's constitutional rights were not violated by the trial court's treatment of his competency claim (point of error eight).

Points of error six, seven, and eight are overruled.

■■■ In his final point of error, appellant contends that the trial court had "no authority to try [him] for burglary during a trial for aggravated assault."

"It has long been the rule in this State that where a defendant is faced with multiple pending indictments, those indictments may be consolidated into a single proceeding with the express or implied (by failure to object) consent of the defendant." *Milligan v. State*, 764 S.W.2d 802, 803 (Tex. Crim.App.1989).

Appellant contends that the following objection constitutes a valid objection:

COURT: [When Defendant returned to courtroom]. The Court wants to advise you, Mr. Burks, that the jury has been impaneled in both of these cases and they are going to trial.

A: How can you consolidate two separate indictments? How can you consolidate? How can you do anything with-

out asking my permission? He is not my attorney.

C: Take him back to the cell [whereupon appellant was removed].

Appellant's remarks, viewed in light of the fact that he was represented by counsel, are insufficient to prevent consolidation. Appellant's counsel, having not objected to the consolidation of the indictments before the paneling of the jury, waived any right to complain on appeal. TEX.R.APP.P. 52(a). The indictments were properly tried together.

Point of error nine is overruled.

The judgment of the trial court is affirmed.